2020 IL App (1st) 190252-U

THIRD DIVISION
December 9, 2020

No. 1-19-0252

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 12579 |
| | ) | |
| JEREMY MUDD, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; the prosecutor did not misstate the evidence or shift the burden of proof to defendant when they argued defendant could have requested forensic testing of firearm recovered from the possession of a convicted felon.

¶ 2    Following a jury trial in the circuit court of Cook County defendant, Jeremy Mudd, was convicted of unlawful use of a weapon by a felon (UUWF) and was sentenced to five years and six months' imprisonment. Defendant appeals his conviction on the ground the State committed misconduct during rebuttal closing argument by misstating the evidence and shifting the burden of proof to the defense. Defendant argues the trial court's error in permitting this misconduct was not harmless beyond a reasonable doubt and that his conviction should be reversed because the State's misconduct resulted in unfair prejudice.

¶ 3    For the following reasons, we affirm defendant's conviction.

¶ 4                              BACKGROUND

¶ 5    Defendant does not challenge the sufficiency of the evidence to sustain his conviction. Therefore, we will recount it only summarily to provide the appropriate context for our disposition.

¶ 6    In August 2017 police responded to a large group in a park. When police arrived they observed 40 to 50 people in the park drinking and playing loud music. Officer Garcia testified at defendant's trial he observed a man later identified as defendant grabbing at the area of a bulge in his waistband. Officer Garcia's partner, Officer Rice, testified he saw a bulge on defendant's right side, an object sticking out of defendant's shirt, and that defendant was holding his waistband. Garcia saw defendant exit the park and he followed defendant. Defendant ignored the officers' request to stop and continued walking away still holding his right side. Garcia testified he observed defendant kneel near the rear driver's side wheel of a van parked in an alley. Rice testified he saw defendant kneel, remove an object from his waistband, and place an object on the rear driver's side wheel of the vehicle but he could not see what the object was. Garcia and his partner stopped defendant at the van and Garcia recovered a handgun from the top of the rear driver's side tire.

¶ 7    In closing argument defendant's attorney argued, in pertinent part, as follows:

> "Now, let's talk about what you don't have. What you don't have are fingerprints. As far as we know, that gun was never even submitted for testing for fingerprints.
>
> You don't have DNA. Why? Because as far as we know, that gun was never even submitted for DNA.

You don't have gunshot residue. Why? Because they never swabbed [defendant] for gunshot residue.

You don't have body cameras. Why? They say they weren't wearing body cameras. Seven months ago. In Chicago? Police officers weren't wearing body cameras?

They say there's no in-squad video. Really? In Chicago, seven months ago, no in-car video? Why? Because they think they can just say, trust me. Believe me. Take my word for it.

Well, you know, Ladies and Gentlemen, usually we don't say, take my word for it. We say, don't take my word for it. Look at this and judge for yourself.

The problem with the case before you there is no this. You have nothing else. And is that really how we want to conduct the criminal justice system in this city? Because if it is, we don't need trials. We don't need prosecutors, or judges, or defense lawyers, or juries. The police can just say, we saw him do it. End of story.

That's not how we conduct justice in this city.

You all told us at the beginning of this case, the very beginning of this case [the trial judge] asked all of you would you judge a police officer's word the same as you would any other citizen, and every one of you said, yes. Yes, I will.

They have no corroboration. The curtain has been pulled back, and all you have are men.

Men who didn't tell a consistent story. Men who didn't put important information in their reports. Men who have nothing, nothing to back up what they're telling you."

¶ 8 During its rebuttal closing argument, the State argued as follows:

"And it is our burden of proof, Ladies and Gentlemen. It is the State's burden of proof to prove the elements beyond a reasonable doubt. It's a burden we take on every single day.

[Defendant's attorney]: Objection

THE COURT: To what line, overruled.

[Assistant State's Attorney]: And we welcome that burden, Ladies and Gentlemen. We welcome that burden.

But both sides have access to the evidence. Both sides if they wanted testing to be done can request testing to be done. Both sides.

* * *

As I told you when we started, Illinois has rules and laws about who can, who cannot possess weapons. This defendant is a convicted felon. He cannot—

[Defendant's attorney]: Objection. I would object.

THE COURT: Objection is overruled. That's an element of the offense.

[Assistant State's Attorney]: He cannot own, possess, he cannot hold a gun."

¶ 9 Defendant's attorney filed a posttrial motion for a new trial on the grounds the trial court erred in overruling defense objections during closing argument and the State shifted the burden

of proof to the defense during closing argument. The trial court denied defendant's motion for a new trial.

¶ 10    This appeal followed.

¶ 11                                    ANALYSIS

¶ 12    Defendant argues that the State's rebuttal closing argument constituted "classic burden shifting" and also misstated the evidence when it argued the defense could have requested forensic testing of the gun if it wanted to. Neither the prosecution or the defense presented evidence of any forensic testing on the handgun involved in this case or asked a witness whether such testing was available to both the prosecution and the defense. The absence of testing was raised during the defense's questioning of the police officers and in the parties' closing arguments. "The standard of review applied to a prosecutor's closing argument is similar to the standard used in deciding whether a prosecutor committed plain error. [Citations.] A reviewing court will find reversible error only if the defendant demonstrates that the remarks were improper *and* that they were so prejudicial that real justice was denied or the verdict resulted from the error. [Citation.]" (Emphasis added.) *People v. Jackson*, 2020 IL 124112, ¶ 83. We also agree with defendant that our "resolution of the prosecutorial misconduct issue should be the same under either" a *de novo* standard of review or an abuse of discretion standard of review. See *People v. Rudd*, 2020 IL App (1st) 182037, ¶ 83 ("when a prosecutor's closing argument comments are challenged, we apply an abuse of discretion standard to the trial court's determination regarding the propriety of the challenged comments but review whether any improper comments were sufficiently egregious to warrant a new trial *de novo*.").

¶ 13    Defendant argues the State misstated the evidence when it stated the defense could have tested the gun because "the State objected on numerous occasions as to whether the firearm here

was tested for fingerprints and \*\*\* chose not to question the officers about whether [defendant] could have requested that the firearm be tested." Defendant argues the State shifted the burden to him to " 'come up with evidence to create a reasonable doubt of his guilt.' [Citation.]" when the State argued as follows:

> "And it is our burden of proof, Ladies and Gentlemen. It is the State's burden of proof to prove the elements beyond a reasonable doubt. It's a burden we take on every single day. [Objection overruled]. And we welcome that burden, Ladies and Gentlemen. We welcome that burden. But both sides have access to the evidence. Both sides if they wanted testing to be done can request testing to be done. Both sides."

Defendant further argues the State's misconduct was not harmless because of "discrepancies" in the evidence as to whether he possessed the gun. Finally, defendant argues trial counsel preserved these errors for review but if we find the error was not preserved review is warranted based on either prong of the plain error analysis or trial counsel's deficient performance.

¶ 14 The State responds defendant forfeited this argument by failing to object when the prosecutor made the allegedly offending comments. Defendant asks this court to review the alleged error for plain error or as a result of trial counsel's ineffective assistance. The State responds neither alternative means of reaching defendant's argument applies because no error occurred and, therefore, defendant suffered no prejudice. The State argues no error occurred because the prosecutor's statement was not a mischaracterization of the evidence but rather "[t]he ASA's remark about the defense's access and ability to request testing was \*\*\* a reasonable inference based on common sense and the evidence at trial." Further, the State's comments "were provoked by and directly responsive to defense counsel's remarks." The State

further argues the comments that allegedly shifted the burden of proof did not in fact do so because "the prosecutor here merely pointed out that both parties had access to the evidence and could request testing; but the prosecutor never stated or implied that defendant was required to provide any evidence proving his innocence or faulted him for not doing so." (Emphases omitted.) Finally, the State argues "any error associated with the ASA's remarks was *de minimis* and harmless beyond a reasonable doubt" given the "clear, consistent, credible testimony that defendant possessed a firearm, and *** that defendant was a convicted felon at the time."

¶ 15    "A claim is forfeited unless a contemporaneous objection was made and a written posttrial motion raised the issue, and forfeiture may be overcome under a plain-error analysis. [Citation.]  As noted above, the first step in plain-error analysis is determining whether an error occurred at all. [Citation.]" *People v. Short*, 2020 IL App (1st) 162168, ¶ 79.  Defendant failed to make a contemporaneous objection to the prosecutor's comments defendant now claims misstated the evidence and shifted the burden of proof.  Defendant argues he made an objection during closing argument and was not required to make another objection "on identical grounds;" he was only required to "object during and after trial" (see *People v. Mohr*, 228 Ill. 2d 53, 65 (2008)), which he claims he did.  The "identical" objection on which defendant relies in this case, however, was to the prosecutor's statement that "It's a burden we take on every single day."  We note,

> "the State always has the burden of proving, beyond a reasonable doubt, the
> crime's elements, and the State may not suggest that it has no burden of proof or
> attempt to shift the burden of proof to the defendant. [Citation.]  However, if
> defense counsel provokes a response in closing argument, the defendant cannot

complain that the State's reply in rebuttal argument denied him a fair trial. [Citation.]" *People v. Legore*, 2013 IL App (2d) 111038, ¶ 55.

¶ 16    Regardless, the State's allegedly burden-shifting comment ("But both sides have access to the evidence. Both sides if they wanted testing to be done can request testing to be done. Both sides.") followed defendant's objection to a previous statement and defendant's trial counsel failed to object again. Therefore, defendant's arguments are forfeited. *Short*, 2020 IL App (1st) 162168, ¶ 79.

¶ 17    Having determined that defendant forfeited this claim of error, "[w]e may consider a forfeited claim under the plain-error doctrine, under which we consider a clear or obvious error if either (1) the trial evidence was closely balanced or (2) the error was so serious as to deny the defendant a fair trial and challenges the integrity of the judicial process. [Citation.] A defendant claiming plain error has the burden of showing plain error, and the first step in plain-error analysis is determining whether an error occurred at all. [Citation.]" *Id.* ¶ 66.

¶ 18    Regarding the alleged error in this case, "[p]rosecutors are afforded wide latitude in closing argument and may properly comment on the evidence presented or reasonable inferences drawn from that evidence, may respond to comments by defense counsel that invite response, and may comment on witness credibility. [Citations.] A prosecutor is not allowed to misstate the evidence, argue facts not in evidence, or attempt to shift the burden of proof to the defense." *Id.* ¶ 76. "Our review considers closing arguments in their entirety and considers remarks in context, and improper remarks do not merit reversal unless they cause substantial prejudice to the defendant. *Id.* Substantial prejudice exists when the jury could have reached a contrary verdict had the improper remarks not been made or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the conviction. *Id.* The strength of the

evidence against the defendant is often a decisive factor in this determination." *Id.* ¶ 78. With these standards in mind, we hold no error occurred in this case.

¶ 19     The first allegation of error, that the prosecutor misstated the evidence because there is no evidence in the record  that, in fact, defendant could have requested testing of the firearm, fails. The State argues the statement was a "reasonable inference[] drawn from [the] evidence" (*id.* ¶ 76).  Defendant replies the fact the firearm could have been tested by him was never established for the jury "and thus misstated the evidence and at the same time improperly shifted the burden to [defendant.]"  We agree with the State.

¶ 20     A defendant in a criminal case has a "constitutional right to conduct his own tests on physical evidence." *People v. Beasley*, 384 Ill. App. 3d 1039, 1048 (2008), citing *People v. Peeples*, 155 Ill. 2d 422, 477 (1993).  In *Peeples*, our supreme court wrote as follows:

> " 'There can be no question that the defendant has a constitutional right to conduct his own tests on physical evidence.' [Citation.]
>
> Supreme Court Rule 412 requires the State, upon written motion of defense counsel, to disclose to defense counsel, *inter alia*, any tangible object the prosecutor intends to use at trial, or which was obtained from or belongs to the defendant.  (134 Ill. 2d R. 412(a)(v).)  The rule further provides that the State may perform this obligation (1) in any manner agreed to by itself and defense counsel, or (2) by notifying defense counsel that those objects may be tested, and making available to defense counsel those objects 'and suitable facilities or other arrangements for the inspection and testing of those objects.  134 Ill. 2d R. 412(e).  The committee comments to Supreme Court Rule 412(e) explain as follows:

'Access to material by a defense expert must be permitted, sufficient to allow him to reach conclusions regarding the State's examining or testing techniques and results. Where feasible, defense counsel should have the opportunity to have a test made by his chosen expert, either in the State's laboratory or in his own laboratory using a sufficient sample.' 134 Ill. 2d R. 412, Committee Comments, at 349." *Peeples*, 155 Ill. 2d at 477.

¶ 21 This court has long recognized that jurors are not required to "check their common sense at the door" to the courthouse. Long ago, our supreme court wrote that "[w]henever the subject-matter of inquiry is of such a character that it may be presumed to lie within the common experience of all men of common education, moving in the ordinary walks of life, *** the jury are supposed in all such matters to be entirely competent to draw the necessary inferences from the facts testified of by the witnesses. [Citation.]" (Internal quotation marks omitted.) *Hellyer v. People*, 186 Ill. 550, 558 (1900), see also Illinois Pattern Jury Instructions-Criminal Intro. 1 ("We agree with those cases holding that 'Courts are *** not required to give an instruction that would provide the jury with no more guidance than that available to them by application of common sense.' *People v. McClellan*, 62 Ill. App. 3d 590, 595 (1978)."). Matters within the common knowledge of jurors includes knowledge of the law and legal procedures. See, *e.g.*, *People v. Rave*, 392 Ill. 435, 444 (1946) (common knowledge that writs of *habeas corpus* are filed for persons serving life sentences); *People v. Taylor*, 410 Ill. 469, 474 (1951) (common knowledge that screw drivers and pliers are "burglary tools" within meaning of statute); *People v. Barnette*, 30 Ill. 2d 359, 370 (1964) (common knowledge that death is not the only penalty for

murder). Defendant himself argued in reply that the trial court's instruction to the jury was that it "should consider all the evidence in the light of your own *** experience in life."

¶ 22    This court addressed a defendant's similar argument "that the State improperly commented on [the] defendant's failure to list [a] home on a MLS where no testimony was introduced regarding listing services." *People v. Jackson*, 391 Ill. App. 3d 11, 42 (2009). This court rejected the defendant's argument that the prosecutor's remarks were not supported by facts reasoning that "[t]he prosecution's argument was based upon common sense and life experience, factors which the jury was instructed to keep in mind when considering the evidence. See *People v. Beard*, 356 Ill. App. 3d 236, 241 (2005) (found no error in the prosecution's argument that a particular individual simply would not have the strength to have caused the victim's injuries and noted that the prosecution is permitted to discuss subjects of general knowledge, common experience, or common sense)." *Jackson*, 391 Ill. App. 3d at 42-43.

¶ 23    We reach a similar conclusion here. We believe the fact a defendant has access to evidence to be used against him "to have a test made by his chosen expert" is a matter of "general knowledge, common experience, or common sense." *Id.* The State's argument was not improper. *Id.* Additionally, the jury could reasonably infer the gun was available for defendant to test and that he could have requested such testing, from the testimony police recovered and inventoried the gun. See *Short*, 2020 IL App (1st) 162168, ¶ 76 (prosecutors may properly comment on the evidence or reasonable inferences drawn from that evidence). Defendant's argument the prosecution misstated the evidence fails.

¶ 24    The second allegation of error, that the State improperly shifted the burden of proof, also fails. Defense counsel based closing argument on the absence of forensic testing of the gun in this case. In response, the prosecution argued, correctly, that defendant could have requested

forensic testing of the gun if he wanted it. The defense argument provoked a response in rebuttal and, therefore, "defendant cannot complain that the State's reply in rebuttal argument denied him a fair trial." *Legore*, 2012 IL App (2d) 111038, ¶ 56.

> "Additionally, while the prosecution is generally not allowed to comment on a defendant's failure to produce evidence, such comments are acceptable if a defendant with equal access to that evidence assails the prosecution's failure to produce it. [Citation.] Thus, as the defense argued that the State could have introduced [certain] evidence, it was not error for the State to argue that defendant also did not introduce the [evidence.] *Cf. People v. Nowicki*, 385 Ill. App. 3d 53, 91 (2008) (it was proper for prosecutor to point out that the defendant could have subpoenaed police officers, in response to the defense's highlighting that the State had not called officers as witnesses); *People v. Baugh*, 358 Ill. App. 3d 718, 741-42 (2005) (prosecutor's argument that the defendant could have produced telephone records was not improper where defense counsel had argued that the State could have produced such records but had chosen not to)." *Legore*, 2013 IL App (2d) 111038, ¶ 57.

¶ 25    Finally, we find that the prosecutor did not "imply that defendant was required to present evidence; rather, the State [at most implied] that no evidence existed in this case to support defendant's theory" that his fingerprints were not on the gun because he did not place it where police recovered it or that the State failed to prove that he did place it there beyond a reasonable doubt. See *People v. Glasper*, 234 Ill. 2d 173, 212 (2009). The prosecutor commits misconduct and their comments are "improper [if they] suggest[] that defendant was required to present evidence tending to prove his innocence." *Id.* Here, as in *Glasper*, "[t]he State's comments ***

- 12 -

made no such suggestion, were invited by defense counsel's argument, and were reasonable in light of the facts presented in this case." *Id.* We find no error in the prosecutor's rebuttal.

¶ 26 Having found "no clear or obvious error in the complained-of remarks by the prosecutor, the doctrine of plain error provides no relief from the forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 4. Further, "[f]rom our finding of no clear or obvious error, it follows that omitting to object fell within the wide range of reasonable professional assistance." *Id.* ¶ 5. "[T]he failure of a defendant to show that error occurred at all defeats both an ineffective assistance claim and a claim of error under either prong of the plain error doctrine." *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47. Accordingly, defendant's arguments both fail and the judgment of the circuit court of Cook County is affirmed.

¶ 27                                                    CONCLUSION

¶ 28 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 29 Affirmed.