**2022 IL 126830**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 126830)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JEREMY MUDD, Appellant.

*Opinion filed January 21, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1        After being convicted of unlawful use of a weapon by a felon (UUWF), defendant argued on appeal that comments made in the prosecution's rebuttal closing argument constituted reversible error because they misrepresented the evidence and shifted the burden of proof to him. Alternatively, he contended that

his trial attorney provided ineffective assistance of counsel by failing to object to the State's rebuttal comments.

¶ 2        The appellate court upheld defendant's conviction, concluding that the comments did not shift the burden of proof and that they represented " 'general knowledge, common experience, or common sense' " that did not require an evidentiary foundation. 2020 IL App (1st) 190252-U, ¶ 23 (quoting *People v. Jackson*, 391 Ill. App. 3d 11, 43 (2009)). While we base our decision on different grounds, we affirm the judgment of the appellate court.

¶ 3                                I. BACKGROUND

¶ 4        In August 2017, defendant Jeremy Mudd was arrested and charged in Cook County with UUWF, among other offenses, after police responded to a large gathering of people reportedly drinking and playing loud music in a park after closing time. At trial, defense counsel's opening statement established the groundwork for challenging the strength of the State's case due to a lack of testing and evidence, informing the jury that

> "[t]here are numerous things that are documentation, things like forensic analysis and testing, DNA, gunshot residue, fingerprints, photographs, audiovisual recordings. You won't hear any of that. You won't hear that the officers submitted a gun for fingerprints or that Mr. Mudd's fingerprint was on that firearm. You won't hear that they submitted for gunshot residue testing, or that any gunshot residue was on Mr. Mudd. You won't hear that any DNA was swabbed on that firearm or any DNA was recovered."

The State's evidence was indeed extremely limited. In its case-in-chief, the State presented only the testimony of the two police officers involved in defendant's arrest, Gerardo Garcia and Jeremy Rice.

¶ 5        Officer Gerardo Garcia testified that at about 10:20 p.m. on August 12, 2017, he and his partner, along with officers in another squad car, drove to Harding Park in Chicago to investigate a report of a large number of people drinking and playing loud music. Officer Garcia stated that 40 to 50 people were in the park when he arrived. He and an officer from the other squad car, Jeremy Rice, entered the park.

Officer Garcia quickly noticed that defendant was holding his hand over a bulge on the right side of the waistband of his shorts. As the officers approached, defendant started to walk quickly away toward a door in the fence opening into an alley. Officer Garcia described the lighting from the nearby streetlights and elevated line tracks in the area as good.

¶ 6 Officer Garcia testified that, when defendant was instructed to stop, he merely looked backward and asked, "Who, me?" Still holding the right side of his waistband, defendant proceeded down the alley, followed closely by the two officers. Officer Garcia was five to eight feet away as defendant approached the driver's side of an unoccupied van parked in the alley. No other vehicles or people were in the alley at the time.

¶ 7 Although Garcia testified that he saw defendant briefly kneel beside the driver's side rear tire, that detail was not included in the incident report. Officer Garcia testified that Officer Rice then stopped defendant while Garcia checked the driver's side rear tire and found a gun on top of it. He used his bare hand to pick up the weapon, contrary to protocols requiring the use of gloves, because people had begun to enter the alley and were yelling. After securing defendant in a squad car, Officer Garcia inspected the gun and found a single bullet in the chamber. The physical evidence was later submitted to the state crime lab.

¶ 8 During cross-examination, defense counsel attempted to ask Officer Garcia about any fingerprint, DNA, or gunshot residue tests that were run on the gun, but the State objected. The trial court sustained those objections.

¶ 9 Officer Rice then took the witness stand for the State, offering a similar account of the events. On entering the park, Officer Rice noticed that defendant had "a bulge poking from the right side of his body, also holding his waistband *** an object appeared to be sticking out of his shirt." His testimony of how he followed defendant out of the park and into the lighted alley was consistent with Officer Garcia's account. Officer Rice testified that when he "told [defendant] to stop, let me talk to you," defendant turned and said "Who, me?" and continued down the alley. That detail was also included in his report. Officer Rice testified that he was 5 to 10 feet away when he saw defendant approach a parked minivan, drop to one knee, and place an object he removed from his waistband onto the driver's side rear tire. His testimony about how a gun was recovered from the tire echoed Officer

Garcia's account. Rice's testimony about where defendant placed the object he removed from his waistband, however, differed somewhat from his grand jury testimony. During the grand jury proceedings, Officer Rice answered affirmatively when asked, "At the time he placed that weapon onto the ground, was [defendant] the only person by the van?" After Officer Rice completed his testimony, the parties stipulated to defendant's prior felony conviction. Defendant did not present any witnesses or other evidence.

¶ 10 During closing arguments, defense counsel pointed out the absence of certain evidence from the State's case.

"Now, let's talk about what you don't have. What you don't have are fingerprints. As far as we know, that gun was never even submitted for testing for fingerprints.

You don't have DNA. Why? Because as far as we know, that gun was never even submitted for DNA.

You don't have gunshot residue. Why? Because they never swabbed Mr. Mudd for gunshot residue.

* * *

Well, you know, Ladies and Gentleman, usually we don't say, take my word for it. We say, don't take my word for it. Look at this and judge for yourself.

The problem with the case before you [is] there is no this. You have nothing else. And is that really how we want to conduct the criminal justice system in this city? Because if it is, we don't need trials. We don't need prosecutors, or judges, or defense lawyers, or juries. The police can just say, we saw him do it. End of story. That's not how we conduct justice in this city."

¶ 11 After emphasizing the lack of any evidence to corroborate the officers' testimony, defense counsel summarized by arguing, "The curtain has been pulled back, and all you have are men. *** Men who have nothing, nothing to back up what they're telling you."

¶ 12 In its rebuttal closing argument, the State responded by asking the jurors to use their "common sense." It noted that, because no one else was near the van when

defendant knelt beside the tire, he was the only person who reasonably could have left the gun, making any forensic testing of the weapon unnecessary.

¶ 13 The following exchange then occurred. The State explained that,

"And it is our burden of proof, Ladies and Gentleman. It is the State's burden of proof to prove the elements beyond a reasonable doubt. It's a burden we take on every single day.

DEFENSE COUNSEL: Objection.

THE COURT: To that line, overruled.

PROSECUTOR: And we welcome that burden, Ladies and Gentleman. We welcome that burden. But both sides have access to the evidence. Both sides if they wanted testing to be done can request testing to be done. Both sides."

Defense counsel did not object to the latter comments addressing the parties' ability to test the evidence.

¶ 14 The trial court then provided the jury with its final instructions, including a reminder that defendant was "presumed innocent" and that only proof "beyond a reasonable doubt that he is guilty" presented by the State could overcome that presumption. The court also explained that "[t]he State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." After instructing the jury on the elements of UUWF, the trial court noted again that "the State must prove" each one of those elements. After deliberating, the jury found defendant guilty of UUWF, and the trial court sentenced him to 5½ years in prison.

¶ 15 In his initial posttrial motion, defendant requested a new trial, but that motion did not mention the comments in the State's rebuttal closing argument. Defendant subsequently filed a *pro se* motion pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), asserting that his trial attorney committed errors that constituted ineffective assistance of counsel.

¶ 16 At the preliminary *Krankel* hearing, defendant alleged that counsel erred by not requesting that the gun found by the van be tested for DNA and fingerprints. Trial

counsel explained that the omission "was trial strategy to argue to the jury that there was no DNA or fingerprints recovered from that item. I believe that based on my conversations with my client in confidence, that those particular items would have hindered the defense rather than helped." Finding that the legal representation defendant received was "very vigorous" and "very effective," the trial court denied his *Krankel* motion.

¶ 17    The public defender was then appointed to represent defendant, and he filed a supplemental motion for a new trial, asserting, in relevant part, that the trial court erred by overruling trial counsel's objections during the State's opening statement and closing argument and that the State's rebuttal argument improperly shifted the burden of proof to defendant. The motion did not claim, however, that the State's closing argument misstated the evidence at trial. The trial court denied both the original and supplemental motions for a new trial.

¶ 18    On appeal, defendant argued that the State's rebuttal argument misstated the evidence by asserting that he could have requested forensic testing on the gun without presenting any supporting testimony. He also claimed that the State's rebuttal argument improperly shifted the burden of proof to defendant. 2020 IL App (1st) 190252-U, ¶ 2. The appellate court affirmed defendant's UUWF conviction (*id.* ¶ 26) after finding that he had not preserved the alleged error (*id.* ¶¶ 13-17). The court determined that it was "a matter of 'general knowledge, common experience, or common sense' " that defendant had "access to evidence to be used against him 'to have a test made by his chosen expert.' " *Id.* ¶ 23 (quoting *People v. Jackson*, 391 Ill. App. 3d at 42-43, and *People v. Peeples*, 155 Ill. 2d 422, 477 (1993)). The appellate court also concluded that the State's argument that defendant could have requested testing on the gun did not improperly shift the burden of proof. *Id.* ¶¶ 24-25. This court allowed defendant's petition for leave to appeal from the appellate court's judgment pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2019) and Rule 612 (eff. July 1, 2017).

¶ 19                                    II. ANALYSIS

¶ 20    Before this court, defendant raises two issues: (1) whether the claim in the State's rebuttal argument that both sides in the case could have requested testing of the evidence requires a reversal of defendant's UUWF conviction and a remand for

a new trial because it misstated the evidence and shifted the burden of proof to defendant and (2) alternatively, whether defendant received ineffective assistance of counsel when his trial attorney failed to object to the State's unsupported assertion in its rebuttal argument that both parties could have asked for forensic testing.

¶ 21 Before we reach the merits of defendant's claim that the State's rebuttal argument constituted reversible error, we must first address his failure to timely object to the comments that form the basis of this appeal. It has long been Illinois law that an issue not accompanied by a contemporaneous trial objection and raised in a posttrial motion is forfeited. In the absence of the requisite objections, forfeited issues are reviewable on appeal in a criminal case only under the doctrine of plain error. *People v. Jackson*, 2020 IL 124112, ¶ 81. Applying those principles, our review is limited to determining whether defendant has shown that the State's alleged rebuttal argument misconduct constitutes plain error. *Id.*

¶ 22 Plain error may be demonstrated in one of two ways. To establish first-prong plain error, defendant must show that the evidence was closely balanced and that the prosecutor's comments were "clear or obvious" reversible error that changed the outcome of the trial. See *People v. Johnson*, 218 Ill. 2d 125, 143 (2005) (stating the relevant standard). To obtain relief under second-prong plain-error principles, defendant must prove that the alleged error was serious enough to affect the fairness of the trial or to undermine the integrity of the judicial process. *Jackson*, 2020 IL 124112, ¶ 81. Because prejudice is presumed when second-prong plain error is shown, defendant need not demonstrate prejudice to obtain relief on appeal. *People v. Sebby*, 2017 IL 119445, ¶ 50. To successfully maintain a claim of either first- or second-prong plain error, however, a defendant must prove actual error. *People v. Birge*, 2021 IL 125644, ¶ 24. Here, defendant argues for the application of both first-prong and second-prong plain error, claims that we will review *de novo*. *Id.*

¶ 23 As defendant notes, the only disputed question at trial was whether he knowingly possessed a gun prior to his arrest. Because he believes the results of any forensic testing performed on the weapon retrieved from the van would have weighed heavily on the jury's resolution of that question, defendant asserts that the State's rebuttal argument comments were a critical component in the jury's deliberative process and ultimately led to him being found guilty in this case.

¶ 24    Initially, defendant argues that the comments were reversible error because they were not supported by any trial evidence establishing that both parties could request forensic testing. In support of that contention, he cites the appellate court decisions in *People v. Williams*, 333 Ill. App. 3d 204 (2002), *People v. Jackson*, 2012 IL App (1st) 102035, and *People v. Nightengale*, 168 Ill. App. 3d 968 (1988), as well as this court's opinion in *People v. Whitlow*, 89 Ill. 2d 322 (1982).

¶ 25    In *Williams*, 333 Ill. App. 3d at 214, the prosecution's theory of the case was that Williams shot a woman because he knew he would be declared the father of her child in an upcoming paternity hearing and wanted to avoid any child support obligation. On appeal, Williams claimed that the State's closing argument improperly imputed that motive to him without first establishing a proper evidentiary foundation. *Id.* at 208. After reviewing the trial record of the State's attempt to obtain evidentiary support for its theory when it cross-examined Williams, the appellate court found that the State's questioning was inconclusive and merely assumed the results of the pending paternity tests. *Id.* at 209. Thus, the State's closing argument was reversible error because it was premised solely on a failed evidentiary showing. Without any evidence to substantiate its theory, the State could not make that factual argument to the jury. *Id.* at 214.

¶ 26    In *Jackson*, 2012 IL App (1st) 102035, the primary issue at trial was whether Jackson knew a gun was present in his car when he was pulled over by the police. He consistently maintained that he did not know about the gun, explaining that other people had access to the car. *Id.* ¶ 17. After his conviction, Jackson's appeal centered, in relevant part, on the State's assertion in its rebuttal closing argument that he had told police that he found a gun in the car without offering any evidence indicating that he had made that admission. *Id.* ¶ 18. Jackson also claimed that the evidence in the case was closely balanced, with the police and Jackson presenting conflicting accounts at trial. The police testified that Jackson attempted to start his stopped car and drive away when they tried to arrest him for possession of cannabis and failure to have a valid driver's license. For his part, Jackson's testimony denied that he tried to restart his car and maintained that the police pulled him out of the vehicle to arrest him. *Id.* ¶ 19.

¶ 27    The appellate court's review of the record on appeal revealed that the conflicting testimony addressing Jackson's knowledge of the gun was closely

balanced and that the State's rebuttal claim that he admitted finding a gun in the car was not supported by any evidence. The court concluded that the State's misstatement of the evidence prejudiced Jackson, and that prejudice was exacerbated by Jackson's inability to correct the misstatement before the jury because it arose during the State's rebuttal closing argument. Consequently, the appellate court found the State's rebuttal argument to be reversible error and remanded the case for a new trial. *Id.* ¶ 20.

¶ 28        Similarly, the appellate court in *Nightengale*, 168 Ill. App. 3d at 974-75, concluded that the State's repeated references in closing argument to evidence not presented at trial, such as the existence of fingerprint evidence, deprived Nightengale of a fair trial. In summarizing the State's extensive litany of trial errors, the appellate court characterized the prosecutor's conduct as "an open mockery of our judicial system and *** totally unprofessional. The repeated disregard of the bounds of proper argument and the prosecutor's conduct was so flagrant and purposeful, we can only conclude that it was done for the purpose of prejudicing defendant." *Id.* at 976.

¶ 29        In *Whitlow*, 89 Ill. 2d at 340, this court reviewed Whitlow's claim that the State made prejudicial statements during its closing argument, directly suggesting without any supporting evidence, that he had committed theft related to the rental on an office space. That claim, however, was refuted by the record on appeal. *Id.* The court concluded that Whitlow was entitled to a new trial because the misrepresentations in the State's closing argument prejudiced him and, combined with its numerous other missteps during the proceedings, constituted reversible error. *Id.* at 341.

¶ 30        The most obvious distinction between this case and the decisions in *Williams*, *Jackson*, *Nightengale*, and *Whitlow* is that those prosecutors' statements conveyed an inaccurate and prejudicial picture of the facts to the jury. In contrast, here the remarks in the State's rebuttal closing argument reflected an accurate and straightforward explanation of the relevant law as stated in Illinois Supreme Court Rule 412(e) (eff. Mar. 1, 2001). According to Rule 412(e)(ii), the prosecution in a criminal case is obliged to "mak[e] available to defense counsel at the time specified such material and information, and suitable facilities or other arrangements for inspection, testing, copying and photographing of such material

and information." Ill. S. Ct. R. 412(e)(ii) (eff. Mar. 1, 2001). That mandate establishes, as a matter of law, that both sides in a criminal proceeding possess the same ability to request forensic testing of the evidence. That is precisely the message the State conveyed to the jury in its rebuttal argument.

¶ 31 Unlike in the cases cited by defendant, the State here did not err by mischaracterizing the trial evidence. Rather, the State's rebuttal statements accurately reflected the substance of Rule 412(e)'s requirement that both sides are able to test the evidence, a purely legal matter, and did not reflect a factual or evidentiary misrepresentation. Indeed, it is difficult to imagine how an accurate portrayal of the parties' ability to request forensic testing, as required by Illinois law, can be deemed to be unduly prejudicial to defendant. This court has never required a factual showing for a legal argument that simply and accurately states the relevant procedural law, and we decline to impose that prerequisite now. Therefore, we reject defendant's claim that the State's rebuttal closing argument constituted error.

¶ 32 Defendant next argues that the State's rebuttal comments created plain error because they improperly shifted the burden of proof to him, citing appellate court decisions such as *People v. Beasley*, 384 Ill. App. 3d 1039 (2008), and *People v. Jackson*, 399 Ill. App. 3d 314 (2010) (*Lewis Jackson*). After careful review, we are not persuaded by that argument.

¶ 33 In *Beasley*, the defendant was convicted after unsuccessfully objecting to the State's closing argument because it shifted the burden of proof to him. Beasley had previously maintained in his own closing argument that the State's failure to test the evidence for fingerprints was unconscionable. In response, the State suggested that, if the failure to request testing of evidence is "unconscionable on the part of [the State,] it's just as unconscionable on the part of the defense. So, if you want something tested, you can get it tested. You can't sit back and say, 'Well, nobody tested it; therefore, the evidence fails.' " (Internal quotation marks omitted.) *Beasley*, 384 Ill. App. 3d at 1043-44.

¶ 34 As the appellate court correctly noted, a criminal defendant has no duty to produce evidence at trial, and the State may never shift its burden of proof to a defendant. *Id.* at 1047-48. Consequently, the appellate court rejected the State's claim that Beasley's closing argument "opened the door" to its remarks by inviting

the prosecution to explain why it chose not to conduct evidentiary testing. *Id.* at 1048. Because a criminal defendant may never bear the evidentiary burden, the court concluded that a defendant's failure to offer evidence at trial could be never properly characterized as " 'unconscionable.' " *Id.*

¶ 35    In holding that the State's comments improperly shifted the burden of proof, the appellate court focused on the State's condemnation of Beasley's failure to request testing. *Id.* The trial court's failure to sustain the defendant's objections to those comments effectively "sanction[ed] an erroneous burden of proof before the eyes of the jury," requiring reversal of the defendant's conviction and remand for a new trial. *Id.*

¶ 36    Contrary to the prosecution's subjective and denigrating commentary in *Beasley*, however, the State's comments here neither condemned defendant's decision not to test the gun nor subjectively characterized that decision. Its comments simply did not reflect the same type of highly negative, and entirely subjective, reflection on the defendant's failure to act that was presented in *Beasley*. Here, the prosecutor simply provided a legally accurate explanation of the requirement in Illinois Supreme Court Rule 412(e) (eff. Mar. 1, 2001) that both parties possess an equal ability to request forensic testing. The State did not commit the type of error that led to the reversal of the defendant's conviction in *Beasley*.

¶ 37    In addition, prior to making the comments cited by defendant, the State's rebuttal argument repeatedly emphasized its retention of the burden of proof in every criminal case. Only after expressly enunciating that fundamental principle did it add, "But both sides have access to the evidence. Both sides if they wanted testing to be done can request testing to be done. Both sides." The record on appeal demonstrates that both parties had previously explained the proper allocation of the burden of proof throughout the proceedings, starting with the opening statements and continuing through the State's rebuttal argument to the trial court's submission of the final jury instructions.

¶ 38    When viewed in the context of the entire trial, the State's indisputably accurate explanation of Rule 412(e) does not support the conclusion that the prosecutor's comments led the jury to believe that the defendant bore any burden of proving his innocence at trial. See *People v. Nevitt*, 135 Ill. 2d 423, 453 (1990) (reviewing the

State's closing argument comment for plain error by examining the context of the entire proceeding to determine if the defendant was denied a fair trial).

¶ 39    Citing the reasoning in *Lewis Jackson*, 399 Ill. App. 3d at 318-19, defendant also argues that the State's comments were reversible error because it failed to offer any evidentiary basis for them. In *Lewis Jackson*, the defendant claimed that the State shifted the burden of proof by "emphasizing" during its closing argument and redirect examination of the State's DNA expert that Jackson had not offered any DNA test results. *Id.* After noting the general bar on prosecutorial comments about a defendant's failure to offer evidence, the appellate court explained that that commentary is "not improper" when "a defendant with equal access to that evidence assails the prosecution's failure to produce it," citing this court's decision in *People v. Patterson*, 217 Ill. 2d 407, 446-47 (2005). *Lewis Jackson*, 399 Ill. App. 3d at 319. After finding that the testimony of the State's DNA expert established that both parties had the opportunity to test the evidence, the appellate court upheld the State's comments as a "proper response[ ] to the defense's suggestion of doubt regarding the lack of testing." *Id.*

¶ 40    We conclude that defendant's reliance on the rationale in *Lewis Jackson* is misplaced. Because the availability of forensic testing to both parties is mandated as a matter of law by Rule 412(e), it is unnecessary for the State to present any evidentiary basis for that purely legal requirement. In addition, the prosecutor in *Lewis Jackson* "emphasized" Jackson's failure to present evidence from forensic testing to the jury (*id.* at 318), while the statements at issue here consisted of merely a brief response explaining a matter of law after the defendant's closing argument highlighted the absence of any forensic testing and asserted that the lack of corroboration undermined the testimony of the arresting police officers. As in *Lewis Jackson*, the prosecutor's statements here simply do not merit the reversal of defendant's conviction.

¶ 41    We note that *Lewis Jackson* relies on this court's decision in *Patterson*, 217 Ill. 2d 407, which supports our conclusion in this appeal. In *Patterson*, we held that the State's redirect examination of its expert witness about the parties' ability to examine a DNA sample and have it retested "was invited by defense counsel's questioning on cross-examination" of the State's expert witness. *Id.* at 446. Because Patterson's cross-examination created a question about the validity of the testing,

- 12 -

the State's redirect examination focused on eliminating any doubts raised on cross-examination. As we concluded, "[i]n such situations, error cannot normally be claimed." *Id.*

¶ 42 The State's comments in both *Patterson* and the instant case were brief and properly directed at refuting an inference that the State's testing decisions were improper. In addition, the parties' arguments and jury instructions in both cases offset any potential juror confusion about which party bore the burden of proof. As we did in *Patterson*, we conclude in this case that the defendant failed to show reversible error. Accordingly, the plain-error doctrine is inapplicable here.

¶ 43 Alternatively, during oral arguments before this court defendant focused, for the first time, on the prosecutor's use of the word "but" immediately prior to its explanation that both parties had the ability to test the evidence. He asserts that the use of that word improperly shifted the State's burden of proof to him.

¶ 44 Our review of the record on appeal convinces us that the State's single usage of that conjunction had virtually no impact on the verdict in this case. Immediately preceding its explanation of the parties' ability to test the evidence, the State accurately and succinctly explained that "it is our burden of proof, Ladies and Gentleman. It is the State's burden of proof to prove the elements beyond a reasonable doubt. It's a burden we take on every single day." Those statements were met with an objection by defense counsel that was overruled by the trial judge. Notably, defendant has not challenged that ruling. The prosecution then continued to emphasize its duty to satisfy its burden of proof by adding, "And we welcome that burden, Ladies and Gentleman. We welcome that burden." Only then did the State add, "But both sides have access to the evidence." We also note that the State's brief comments were directly responsive to defense counsel's closing argument, which extensively highlighted the lack of any testing evidence to corroborate the testimony of Officers Garcia and Rice.

¶ 45 Read in the full context of defendant's trial, the State's inclusion of the word "but" cannot reasonably be read to overcome the repeated references to the State's exclusive possession of the burden of proof repeated throughout the trial. As we previously noted, the proper attribution of the burden of proof started in the parties' opening statements, continued in their closing arguments, and culminated in the trial court's final instructions to the jury.

¶ 46    To establish plain error, defendant had to prove that the State's comments were "clear or obvious" reversible error that shifted the burden of proof to him. Read in the context of the trial as a whole, the State's use of "but" immediately preceding a legally correct statement of Rule 412(e) is neither "clear" nor "obvious" error. Without the requisite showing of actual error, defendant's claims implicating both prongs of plain error necessarily fail.

¶ 47    Further, because the State's rebuttal closing argument did not constitute error, defendant cannot show that his trial counsel's performance fell "below an objective standard of reasonableness." Thus, he has failed to demonstrate that he received ineffective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (reciting the standard for professionally competent conduct by trial counsel). Accordingly, we reject defendant's alternative contention that his trial attorney's failure to object to the State's rebuttal closing argument deprived him of effective assistance of counsel.

¶ 48                                    III. CONCLUSION

¶ 49    The appellate court upheld defendant's UUWF conviction after concluding that his "access to evidence to be used against him 'to have a test made by his chosen expert' " was "a matter of 'general knowledge, common experience, or common sense.' " 2020 IL App (1st) 190252-U, ¶ 23 (quoting *Jackson*, 391 Ill. App. 3d at 42-43, and *Peeples*, 155 Ill. 2d at 477). Although we decline to adopt that rationale, for the reasons stated, we now affirm the judgment of the appellate court upholding defendant's conviction.

¶ 50    Affirmed.