NOTICE
Decision filed 04/17/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230449-U

NO. 5-23-0449

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 20-CF-927 |
| | ) | |
| DERRICK L. LAMBERT, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not abuse its discretion or consider improper matters in sentencing the defendant. The circuit court's judgment is affirmed.

¶ 2    Pursuant to a partially negotiated plea agreement, the defendant, Derrick L. Lambert, pleaded guilty to armed habitual criminal.[1] In exchange, the State dismissed two other charges in the instant case and two subsequent cases that charged him with armed habitual criminal. There was no agreement regarding the sentence to be imposed in exchange for the plea. Following a sentencing hearing, the circuit court sentenced the defendant to 20 years' imprisonment. On appeal, the defendant argues that (1) the circuit court failed to adequately consider the defendant's

_____

[1]A person commits the offense of being an armed habitual criminal if the individual receives, sells, possesses, or transfers any firearm after having been convicted a total of two or more times of any combination of qualifying offenses, as enumerated in the statute. 720 ILCS 5/24-1.7(a) (West 2020).

1

relevant mitigating evidence, including his rehabilitative potential, and (2) it relied on unsubstantiated allegations of other bad acts.

¶ 3                                I. BACKGROUND

¶ 4      On August 17, 2020, the defendant was charged with unlawful possession of a weapon by a felon, a Class 2 felony (count I), and unlawful possession of weapons by felons, a Class 3 felony (count II). Later, on October 5, 2020, the defendant was charged with armed habitual criminal (AHC), a Class X felony (count III). While this case was pending, the defendant was charged with two additional counts of AHC in two separate cases, 21-CF-1340 and 22-CF-596.

¶ 5      On March 20, 2023, the defendant pleaded guilty to count III, AHC. In exchange, the State agreed to dismiss counts I and II in the instant case and dismiss the subsequent cases, 21-CF-1340 and 22-CF-596. The negotiated plea did not contain an agreement as to the sentence to be imposed.

¶ 6      The State offered the following factual basis for the defendant's guilty plea. On August 15, 2020, at approximately 4:27 a.m., the Champaign Police Department responded to a large fight. Witnesses reported that a black Mercedes left the scene of the fight. Later, officers observed a black Mercedes and stopped the vehicle. When officers initiated the stop of the black Mercedes, the driver exited the vehicle with an open bottle of alcohol. Officers then searched the vehicle. The defendant was in the back passenger seat of the vehicle. During the search of the vehicle, officers found a handgun underneath the front passenger seat. The gun had one round in the chamber and six rounds in the magazine. Initially, when asked by the officers, the driver and the defendant both denied knowledge of the gun. Officers then asked a second time who owned the gun and indicated that if one person took ownership of the gun, the other vehicle occupants would not be charged. At that point, the defendant claimed ownership of the gun. The defendant did not possess a FOID card or a concealed carry license. The defendant had previously been convicted of unlawful

2

possession of a weapon by a felon, a Class 2 felony, in a 2014 case and residential burglary, a Class 1 felony, in a 2008 case. Following the State's proffer, the circuit court found that the charges were supported by a factual basis and accepted the defendant's guilty plea.

¶ 7    Subsequently, on April 24, 2023, the circuit court held a sentencing hearing. At the sentencing hearing, the State presented Detectives Donovan and Phenicie to testify as witnesses in aggravation. Detective Phenicie testified regarding a shooting that occurred on July 2, 2021. On that day, at the American Legion there was a repast or a gathering that followed the funeral of David Dalton. Dalton had been murdered on June 21, 2021. Approximately 100 people had gathered for the repast. When Detective Phenicie responded to the American Legion, he observed a loud commotion coming from the parking lot. Detective Phenicie heard people yelling, screaming, crying, and arguing. Once Detective Phenicie entered the parking lot, he noticed a victim on the ground with multiple gunshot wounds.

¶ 8    Later, crime scene investigators arrived to process the scene. Investigators located over 100 shell casings. The shell casings were from eight different guns. Further investigation revealed that after the shooting, the defendant had gone to a local fire station. The defendant sought assistance from the local fire station because he had been shot. When the defendant was located at the fire station, he was not considered a suspect in the shooting.

¶ 9    As part of his investigation, Detective Phenicie interviewed Charmeika Brown. Brown identified the defendant as one of the individuals who was armed during the American Legion shooting. Following Brown's identification, the defendant was arrested. Subsequent to his arrest, the defendant was interviewed about the American Legion shooting. The defendant did not indicate who shot him, who he saw in the parking lot, or who had a firearm. As a result of this incident and Brown's statement, the defendant was charged with AHC in case No. 21-CF-1340.

3

¶ 10    The State then presented Detective Donovan to testify about an incident that occurred on May 14, 2022, that led to the defendant's arrest. On May 14, 2022, a woman called 911 to report an individual or individuals banging on her door. Later, the woman called 911 again to report that there were shots fired inside her home. When officers arrived at the scene, they observed a vehicle leaving the driveway and drove away at a high rate of speed. Officers attempted to make a traffic stop of the vehicle. However, the vehicle fled. Officers pursued the vehicle. During the pursuit, the vehicle exceeded 100 miles per hour. The vehicle ultimately came to a stop when it crashed. After the crash, three individuals exited the vehicle. Officers apprehended the defendant and another man who had run from the vehicle. During the investigation, officers searched the vehicle and discovered four firearms, a Ruger handgun, two AR-15 style firearms, and a 22-caliber rifle. Officers also discovered a laser, body armor, and over 100 rounds of ammunition in approximately 16 different magazines, including a drum magazine. Later in the investigation, the firearms and the firearm accessories were tested for DNA and fingerprints. Neither the defendant's fingerprints nor DNA were found on the firearms or the firearm accessories. Following Detective Donovan's testimony, the State recommended a sentence of 25 years.

¶ 11    In mitigation, defense counsel presented seven letters of support from the defendant's friends and family. Defense counsel also presented the defendant's business plan for a shoe business he intended to open upon his release. The defendant made a statement in allocution. In his statement, the defendant accepted responsibility for his actions and apologized to the court, his family, and the community for his decisions. The defendant also expressed that he had experienced significant trauma in his life, including being in foster care and witnessing several shootings and other violent acts. The defendant asked the circuit court for leniency that would allow him a chance to live a productive life. Defense counsel recommended a sentence of eight years.

4

¶ 12    Following arguments from counsel, the circuit court proceeded to determine an appropriate sentence. In aggravation, the circuit court considered that the defendant's conduct caused or threatened serious harm, and it also considered the defendant's criminal history. The circuit court found that the evidence presented regarding the incidents on July 2, 2021, and May 14, 2022, was relevant, reliable, and credible. Further, the circuit court noted that without eyewitnesses and an opportunity to cross-examine, "it's hard to place too much weight on second or thirdhand reporting of other incidents."

¶ 13    In mitigation, the circuit court found that the defendant did not contemplate that his conduct would cause or threaten serious harm. The circuit court discussed the defendant's character and attitude, which suggested he was unlikely to commit another crime. However, the circuit court noted that the defendant's criminal history made it difficult to put "too much weight" on the defendant's character and attitude. The circuit court considered the defendant's minor children, his prospective business plan, and his family support. Further, in mitigation, the circuit court acknowledged that the defendant had a difficult life and was presumably suffering from PTSD from the multiple times he had been shot at and the number of times he had been shot. After considering the evidence presented, arguments from counsel, and all statutory and nonstatutory factors in aggravation and mitigation, the circuit court sentenced the defendant to 20 years' imprisonment.

¶ 14    Following the sentencing hearing, defense counsel filed a motion to reconsider sentencing. Defense counsel argued that the defendant's sentence was excessive based on the evidence presented in aggravation and mitigation and the circuit court's inadequate consideration of the defendant's potential for rehabilitation. On June 20, 2023, the circuit court held a hearing on the defendant's motion to reconsider. Defense counsel relied on the argument presented in the motion.

5

The circuit court recalled that at the time of imposing the defendant's sentence it considered the statutory factors and explained the reasons for the sentence imposed. The circuit court was not persuaded that the sentence was improper. As a result, the circuit court denied the motion to reconsider. This appeal follows.

¶ 15                              II. ANALYSIS

¶ 16    On appeal, the defendant first contends that the circuit court failed to adequately consider the defendant's rehabilitative potential and relevant mitigating factors. The defendant asks that his case be remanded for resentencing or that his sentence be reduced in accordance with the mitigating factors and rehabilitative potential present in the record.

¶ 17    The Illinois Constitution states "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To achieve the constitutionality mandated balance between the retributive and rehabilitative purposes of punishment, the circuit court must carefully consider all aggravating and mitigating factors, including: "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 18    Circuit courts enjoy broad discretion in sentencing. The circuit court is in a better position to determine the appropriate sentence to impose because that court had the opportunity to assess and weigh factors such as the defendant's credibility, demeanor, moral character, social environment, age, and habits. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We will not reweigh the evidence in aggravation and mitigation or substitute our judgment for that of the circuit court merely because we would have weighed the factors differently. *Stacey*, 193 Ill. 2d at 209.

6

Accordingly, we will give the circuit court's sentencing decision great deference. *Stacey*, 193 Ill. 2d at 209. Absent an abuse of the circuit court's discretion, we will not alter the defendant's sentence. *Stacey*, 193 Ill. 2d at 209-10. If the defendant's sentence is within the statutorily prescribed range, it is presumed proper. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. A reviewing court will not find such a sentence to be an abuse of discretion unless it greatly differs from the spirit and purpose of the law or it is manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 19    After reviewing the record, we first conclude that the circuit court did not abuse its discretion when it sentenced the defendant to 20 years' imprisonment. The offense of AHC is a Class X felony, which has a statutorily mandated sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7(a), (b) (West 2020). As the defendant's sentence was within the sentencing range, we presume the sentence is proper. To rebut this presumption, the defendant must make an affirmative showing that the sentence greatly departed from the spirit and purpose of the law or the constitutional guidelines. The defendant has not made the required showing.

¶ 20    Next, the record shows that in imposing the sentence the circuit court specifically noted it had considered all of the evidence in aggravation and mitigation as well as all the statutory and nonstatutory factors, whether specifically mentioned or not. Further, the circuit court acknowledged that it was "mindful of the statutory and constitutional obligation to attempt to fashion a sentence with a goal towards rehabilitation but also towards protecting the community and potentially providing a deterrent effect to others who may be inclined to engage in similar behavior." During the circuit court's determination, it explicitly stated that it gave "considerable weight to the fact that [the defendant] pled guilty and accepted responsibility in this case with no promise of a cap." The circuit court also considered the defendant's criminal history, which

included four serious felony convictions of residential burglary that resulted in one seven-year prison sentence, followed almost immediately by possession of a weapon, which led to a six-year prison sentence. The defendant then possessed a weapon at a time when he qualified as an armed habitual criminal. The circuit court also mentioned the "two probable incidents where [the defendant] likely possessed a weapon or was aware of weapons in his presence and had an ability to control those weapons." In conclusion, the circuit court determined that 20 years' imprisonment was an appropriate sentence. The defendant's sentence was within the permissible sentencing range for a Class X felony and 10 years less than the maximum sentence allowed. Based on this record, especially in light of the defendant's criminal history, we cannot say that the circuit court abused its discretion in sentencing the defendant to 20 years' imprisonment.

¶ 21    The defendant also contends that the circuit court erred when it relied on unsubstantiated allegations of other bad acts. The defendant requests that the defendant's sentence be vacated and the case be remanded for resentencing as the circuit court had relied on improper factors.

¶ 22    To preserve an issue for appellate review, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). In this case, the defendant did not object during the sentencing hearing. Further, the defendant did not include this issue in his motion to reconsider sentencing. Without an objection and a written postsentencing motion raising this issue, the defendant has not properly preserved this issue. Alternatively, the defendant requests that we review the issue under the second prong plain-error review.

¶ 23    Under the plain-error doctrine in the sentencing context, a reviewing court may consider forfeited claims where a clear and obvious error occurred and either: "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant

8

a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. To prevail under either prong of plain-error review, the defendant bears the burden of proving actual error. *People v. Mudd*, 2022 IL 126830, ¶ 22. Without an error, there can be no plain error. *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 24     At sentencing, the circuit court is given broad discretion to consider various sources and types of information to aid in the sentencing determination. *People v. Harris*, 375 Ill. App. 3d 398, 408 (2007). When the circuit court relies on such improper factors, it abuses its discretion. *People v. Minter*, 2015 IL App (1st) 120958, ¶ 148. During a sentencing hearing, the circuit court may rely on evidence of the defendant's other criminal activity, whether or not it has resulted in a conviction, if the circuit court finds the evidence relevant and accurate. *Minter*, 2015 IL App (1st) 120958, ¶ 148. A list of arrests or charges found in a presentence report, which is unsupported by live testimony or other evidence at the sentencing hearing, does not meet the standards for consideration at sentencing. *Minter*, 2015 IL App (1st) 120958, ¶ 148. However, at the sentencing hearing, the State may prove up the defendant's other criminal activity by having the investigating officer testify about what he learned during his investigation and what witnesses reported to him. *Harris*, 375 Ill. App. 3d at 410. Ultimately, the circuit court, in its sound discretion, will determine whether the testimony is reliable. *Harris*, 375 Ill. App. 3d at 410.

¶ 25     In this case, Detectives Phenicie and Donovan testified regarding their respective investigations, which led to the defendant being charged in two separate cases with AHC. Detective Phenicie testified about the investigation into the shootings that occurred on July 2, 2021, during a repast at the American Legion. Detective Phenicie testified about what he witnessed when he arrived at the scene, what evidence was acquired, and specifically identified the sources of the evidence. The evidence included physical evidence recovered or processed from the scene and witness statements. One of the witnesses, Charmeika Brown, identified the defendant as

someone who was present at the incident and either shot a firearm or possessed a firearm at the time of the incident. Detective Phenicie also testified that the defendant was located after the shooting at a nearby fire station with gunshot wounds. Subsequent to the defendant's arrest, he was interviewed by Detective Phenicie. The defendant was aware that he had a warrant for his arrest because "there were rumors going around that [the defendant] was responsible for shooting Charmeika Brown." Detective Phenicie testified that the defendant was cordial, but he was not cooperative. The defendant did not indicate who shot him or who he saw with firearms at the repast. Through his investigation, Detective Phenicie discovered that several people at the repast had firearms, even if the firearm was not used. Detective Phenicie's testimony was subject to cross-examination.

¶ 26    Detective Donovan testified about his investigation regarding the incident that occurred on May 14, 2022. Detective Donovan described the evidence acquired and identified the sources of that evidence. As Detective Donovan's testimony indicated, on May 14, 2022, a woman called 911 to report banging at her door and called back later to report shots being fired inside her house. When officers responded to the woman's house, they noticed a vehicle leaving the victim's driveway at a high rate of speed. Officers attempted to stop the vehicle, but it fled. Officers continued to pursue the vehicle. At times during the pursuit, the vehicle exceeded 100 miles per hour and disobeyed two traffic control devices. The vehicle came to a stop when it was wrecked. Afterwards, three individuals ran from the vehicle. Officers later apprehended the defendant and another man who had fled from the vehicle. Officers also conducted a search of the vehicle and discovered a Ruger handgun, two AR-15 style firearms, a 22-caliber rifle, over 100 rounds of ammunition, and other firearm accessories. Detective Donovan's testimony was also subject to cross-examination.

¶ 27 Under these circumstances, the circuit court was within its discretion to determine that the detectives' testimony and the evidence were reliable. Furthermore, it is clear from the record that the circuit court did not place any undue weight on "second or thirdhand reporting of other incidents." The circuit court did not err when it considered evidence of the defendant's other criminal activity. Accordingly, the defendant cannot survive plain-error review because without error, there can be no plain error.

¶ 28                                    III. CONCLUSION

¶ 29 For the reasons stated above, we affirm the judgment of the circuit court of Champaign County.

¶ 30 Affirmed.