NOTICE

Decision filed 08/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220613-U

NO. 5-22-0613

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 19-CF-1052 |
| | ) | |
| TERENCE T. LARUE, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's allowance of a non-IPI jury instruction was not an abuse of discretion where the instruction was an accurate and nonargumentative statement of the law.

¶ 2 Defendant, Terence T. Larue, files a direct appeal from his conviction for unlawful possession of a controlled substance and sentence of incarceration related thereto. On appeal, he argues that he should be granted a new trial because the trial court abused its discretion in allowing a non-IPI instruction to be presented to the jury. For the following reasons, we affirm defendant's conviction and sentence.

¶ 3                                  I. BACKGROUND

¶ 4 On July 20, 2019, defendant was charged, by information, with one count of unlawful possession of a control substance (720 ILCS 570/402(a)(2)(A) (West 2018)). The information

1

alleged defendant knowingly and unlawfully possessed between 15 grams and 100 grams of a substance containing cocaine. Defendant waived a preliminary hearing, entered a not guilty plea, and requested a jury trial.

¶ 5 Defendant's initial jury trial was held on April 21, 2022. However, after confirming the jury was deadlocked, the court declared a mistrial on April 22, 2022, noting the only issue was defendant's possession of the drugs.

¶ 6 The jury was impaneled for defendant's second trial on May 26, 2022. On May 27, 2022, the parties advised the court of a stipulation that would be read following the presentation of the State's evidence. Opening statements were presented and the State called Isidro Garcia who testified that on July 20, 2019, he was working as an officer for the Champaign Police Department. He saw a white Jeep Cherokee that was making "furtive movements" while being driven and failed to stop before entering the crosswalk at an intersection. He decided to make a traffic stop and traveled behind the vehicle, which turned into a driveway on West Beardsley in Champaign, Illinois. As the vehicle came to a stop, the passenger door opened immediately. The passenger looked at the officer, pulled up his pants, and began running southbound. Officer Garcia exited his car, chased the subject, and ultimately apprehended the subject, who was defendant. The officer stated that he deployed Oleoresin Capsicum (OC) spray, a form of pepper spray, during the chase and that ended the chase. The officer handcuffed defendant and, after other officers arrived, defendant was placed in the squad car. Officer Garcia confirmed that he was wearing a body camera, and the squad vehicle had a dash camera. Both were uploaded to the police department's server. He also confirmed that neither video could be edited by the officers. Following identification of the videos, they were admitted with no objection and published to the jury.

¶ 7    Officer Garcia testified that after defendant was in the squad car, he and his fellow officers used a Sudecon Wipe on defendant's face to counteract the effects of the OC spray and then walked the yard where defendant was arrested to locate evidence. During the yard walk, Officer Garcia located two bags of suspected crack cocaine behind the garage where defendant was detained. The officer explained that he did not search the area immediately after defendant's arrest because he was concerned about an attack or ambush by the Jeep's driver. Officer Garcia identified a photograph of the area where defendant was detained, and the bags were found. The photograph was admitted without objection and published to the jury. He also identified the two bags found in the yard, which were admitted without objection. The officer held up the bags for the jury.

¶ 8    Officer Garcia testified that Sergeant Prosser found a large amount of U.S. currency and a digital scale on defendant's person when defendant was searched. The department took custody of the items, tagged them, placed them in bags, and secured the items in an evidence locker. When Officer Garcia processed the scale and currency, he noted that both items were covered in a white substance which he believed was crack cocaine. He identified the scale which was admitted into evidence.

¶ 9    Officer Garcia testified that he spoke with defendant at the Champaign County jail and that interview was published to the jury. At that time, defendant stated the scale was his and the residue was isotone. The officer explained that isotone was used to stretch the product in crack cocaine deals, but isotone itself was not illegal. He stated that the bags found in the backyard were lying on top of the brush found in the yard. The bags had no dirt or mud and "obviously had not been there for a long time." Officer Garcia stated that following the initial traffic stop and during his chase of defendant, the Jeep fled the scene, was eventually located on the other side of Champaign, and they never found the other occupant of that vehicle.

3

¶ 10    On cross-examination, Officer Garcia stated that he left the Champaign Police Department in May 2021 and began working for the Mundelein Police Department in April 2022. In the interim, he worked to become a firefighter. He agreed that deployment of a chemical weapon was reviewed by the police department. He discussed what was considered "furtive movement" when watching vehicles. He explained that he ran after the passenger of the car because the passenger was running from a traffic stop which was considered resisting and obstructing a police officer. He agreed that he deployed OC spray but disagreed that it completely incapacitated defendant. He agreed that he did not see defendant with any type of weapon prior to deploying the spray. After he handcuffed defendant and walked him back toward the squad car, he noticed that the white Jeep Cherokee was gone. He explained the effect of OC spray. He agreed that in addition to the wipes, someone also poured a bottle of water on defendant. He further agreed that no one photographed the bags on the ground.

¶ 11    The State called Sergeant Justin Prosser who had been a patrol sergeant with the City of Champaign since September 2007. He responded to the traffic stop on West Beardsley Avenue in Champaign on July 20, 2019. When he arrived, defendant was already detained, handcuffed, and in the back of the squad car. Sergeant Prosser initially assisted in decontaminating defendant following the OC spray. Thereafter, he searched defendant's pockets. A small digital scale was found in defendant's left pocket and a large amount of currency was found in defendant's right pocket. Those items were placed in a bag and given to Officer Garcia. He noted a white substance on the scale that he believed to be either powder cocaine or crack cocaine.

¶ 12    Thereafter, Sergeant Prosser and Officer Garcia backtracked defendant's flight path and found two bags of suspected crack cocaine. He agreed he wore a body camera that recorded the footage when they found the bags and that footage was uploaded to the department server. He

4

identified the evidence bag containing his initials and badge number. The body camera footage was published to the jury with no objection. He opined that the bags were recently dropped because there were no grass clippings, dirt, debris, or anything that would indicate they had been on the ground for a prolonged period of time.

¶ 13　On cross-examination, Officer Prosser agreed that the neighborhood was troublesome. He further confirmed that there was a lot of drug trafficking in that neighborhood.

¶ 14　Following Officer Prosser's testimony, the court read a stipulation between the parties that agreed defendant was found in the backyard of property on West Beardsley Avenue, Champaign, Illinois, on July 20, 2019, and that during a search of the property, officers located two bags on the ground. The parties further stipulated that both bags contained a white, chunky substance suspected to be crack cocaine and Officer Garcia transported both bags back to the Illinois State Police Forensic Science Laboratory in Springfield, Illinois for forensic analysis. The parties further stipulated that Josh Stern, a forensic scientist employed by the Illinois State Police Division of Forensic Services, was an expert witness in the field of forensic drug chemistry and tested the material in the bags. The parties also stipulated that Mr. Stern would testify that both bags tested positive for the presence of cocaine and weighed a total of 21.9 grams, that cocaine was a controlled substance in Illinois, and the proper chain of custody of evidence was maintained at all times.

¶ 15　Following the court's recitation of that stipulation, the parties further stated that they had another stipulation. The second stipulation was based on the "chunky substance" found on the digital scale and currency taken into evidence and stated no testing was performed on the substances found on the scale or the currency. Thereafter, the State rested.

¶ 16    Defense counsel moved for a directed verdict. The trial court denied the motion. Thereafter, defendant advised the trial court that he did not wish to testify. The parties then addressed the jury instructions. No objection was raised regarding any of the proposed jury instructions based on the Illinois Pattern Jury Instructions (hereinafter IPI). The State requested the court consider providing a non-IPI instruction based on *People v. Mudd*, 2022 IL 126830. That jury instruction would read that Illinois law gives both parties the ability to request forensic testing of a piece of evidence.

¶ 17    The State argued that defense counsel provided in his opening argument that the State did not test certain evidence, namely the residue. It noted arguments in the prior trial that claimed the State had not met its burden of proof and defendant was "in no position to prove what happened." It further argued that the prior statements were not true in this instance because Illinois law provided for testing by both parties. The State argued that its position was consistent with *Mudd* and Illinois Supreme Court Rule 412(e)(ii) (eff. Mar. 1, 2001).

¶ 18    In response, defense counsel argued that *Mudd* was about gunshot residue, and the case was specific to that issue. Counsel further argued that the committee on instructions recommended that non-IPI instructions not be given. Counsel stated that if this was the new law in Illinois then the IPI committee should make a corresponding instruction. Counsel further claimed of having "no idea how the defendant would have done [that] kind of testing, since he had no possession of anything and no ability to have it tested because he didn't have it." Counsel confirmed that it intended to argue that the State had the burden of proof, defendant did not need to prove anything, and the fact that the State had the scale for three years but did not bother to have it tested, fingerprinted, or tested for DNA was important. He further argued that the State's position shifted the burden to defendant.

6

¶ 19    Following argument, the trial court stated its familiarity with *Mudd* and opined that the case was not "necessarily limited to gunshot residue cases" and "could be expanded to DNA or fingerprints or anything else." While the evidence was at the crime lab, the Illinois Supreme Court rules allowed testing at the request of either party, citing Rule 412(e). It stated that the defense could have, pursuant to that rule, asked the State "or filed a motion with [the] court saying that you wanted an order directing the state crime lab to perform some kind of a test." It found *Mudd* "on point" and applied "in all cases, not just for gunshot residue and I think the ultimate ruling by the supreme court was it is an accurate statement of the law." The court stated it did not "change the burden of proof" and therefore, stated it would note the objection but allow "in this very rare situation a non-IPI" based on "*Mudd* and the supreme court rules." The jury instruction was classified as State's Instruction No. 17.

¶ 20    The jury returned to the courtroom. The jury instructions were read and closing arguments were presented. The case was given to the jury on May 27, 2022, and approximately one hour later, the jury reached its verdict finding defendant guilty of possession of a controlled substance. The jury was polled and released. The court ordered a presentence investigation report and set the case for post-trial motions and sentencing on July 5, 2022.

¶ 21    On June 13, 2022, defendant moved for a new trial. The motion contended that (1) defendant was not proven guilty beyond a reasonable doubt; (2) defendant's right of privacy was abridged due to the recorded phone calls at the jail; (3) the court erred in giving jury instruction No. 17; (4) the selection of jurors in Champaign County was not random; (5) the jury venire did not contain persons identifying as black in proportion to the county population; (6) the court erred in denying a mistrial when the State excused jurors 53 and 100, who were black, and claimed the reason for excusing juror 53 was pretextual.

7

¶ 22    On June 24, 2022, defendant filed a *pro se* posttrial motion claiming ineffective assistance of counsel for defense counsel's failure to file a motion to suppress evidence stemming from an alleged illegal traffic violation. In support defendant alleged that the State failed to produce any evidence to confirm that an illegal traffic violation occurred, especially where the State showed a video recording of defendant not committing the violation in question. He further claimed counsel was ineffective for (1) failing to visit him, show him any evidence received in discovery; (2) failing to have the scale tested for fingerprints and DNA (noting the jury asked whether they were tested); (3) failing to ask detrimental follow up questions, like, "would it be fair to say the bags that were recovered could have been in the area prior to defendant?" when no witness testified to seeing defendant throw the bags in the area; (4) allowing a redacted video to be played for the jury was a *Brady* violation; (5) allowing four jurors from a different trial for the same charge being allowed at his trial after being on jury duty for at least three days; (6) allowing African-American jurors to be dismissed or disqualified for no reason; (7) allowing the State to not produce unedited video footage; and (8) not provide the defense sufficient time to review the evidence.

¶ 23    On July 5, 2022, the court denied defense counsel's posttrial motion. Thereafter, the court sentenced defendant to 20 years' incarceration in the Illinois Department of Corrections.

¶ 24    On July 12, 2022, defense counsel filed a motion to reconsider the sentence. Counsel argued that the court should have construed the prior mistrial as mitigation evidence, should have considered the injuries defendant received from the police as mitigation evidence, and placed too much weight on aggravation factors.

¶ 25    At a September 14, 2022, hearing, the court addressed defendant's *pro se* posttrial motion hearing and conducted a *Krankel* hearing. The court considered statements from defendant and his counsel and found defense counsel was not ineffective in his representation of defendant. Defense

counsel's motion to reconsider sentence was also addressed and, following argument, the motion was denied. Defendant appeals.

¶ 26                                          II. ANALYSIS

¶ 27    On appeal, defendant's sole contention is that he was deprived of the right to a fair trial where, over defense counsel's objection, the trial court provided a non-IPI jury instruction that shifted the State's burden of proof to defendant. We review a trial court's decision to give a particular jury instruction for an abuse of discretion. *People v. Tompkins*, 2023 IL 127805, ¶ 42. The question of whether the jury instruction was legally correct is reviewed *de novo*. *Id.*

¶ 28    Here, defendant argues that the non-IPI instruction "was not an accurate and impartial statement of the law" and further argues that the trial court abused its discretion in giving the instruction. We start with the instruction given, which stated, "Illinois law gives both parties the ability to request forensic testing of a piece of evidence." In *Mudd*, the Illinois Supreme Court reviewed Illinois Supreme Court Rule 412(e)(ii) (eff. Mar. 1, 2001) and stated the mandate therein established, "as a matter of law, that both sides in a criminal proceeding possess the same ability to request forensic testing of the evidence." *Mudd*, 2022 IL 126830, ¶ 30.

¶ 29    While defendant contends the instruction was neither an accurate nor impartial statement of the law, he provides no argument in support of the contention. Rule 341(h)(7) requires that an argument "contain the contentions of the appellant and the reasons therefor." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Here, while the contention was provided, the underlying reasoning for the contention is missing. In fact, no portion of defendant's brief sets forth the basis of why the language in the jury instruction was either inaccurate or was not an impartial statement of law. Because defendant failed to present a coherent legal argument on this issue, the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

9

¶ 30    Therefore, we limit our analysis to whether the trial court abused its discretion by giving a non-IPI instruction to the jury. " ' "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." ' " *People v. Baez*, 241 Ill. 2d 44, 106 (2011) (quoting *People v. Patrick*, 233 Ill. 2d 62, 68 (2009), quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 31    It is well established that the Illinois Supreme Court does not encourage " 'a revival of the discredited practice of culling passages from opinions and incorporating them into instructions.' " *People v. Bush*, 157 Ill. 2d 248, 256 (1993) (quoting *People v. Davis*, 173 Ill. App. 3d 300, 310 (1988)). Instead, the duty for creating jury instructions lies with the drafting committees on jury instructions. *Id.* It is equally undisputed that *Mudd* did not direct the jury instruction drafting committee to create a new IPI jury instruction based on Rule 412(e)(ii) when it issued its decision (see *Mudd*, 2022 IL 126830 ¶¶ 31-39) as the Illinois Supreme Court did in *Bush* when it provided proposed jury instruction language until such time as the drafting committee completed the instruction. *Bush*, 157 Ill. 2d at 257.

¶ 32    However, the language in *Bush* must be tempered with Rule 451(a) which graces the trial court with discretion to provide a non-IPI instruction which covers subjects that it determines necessary. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). In such instances, "the instruction given on that subject should be simple, brief, impartial, and free from argument." *Id.* As noted above, defendant presented no argument showing that the non-IPI instruction provided in this case was contrary to the rule mandate of being simple, brief, impartial, and free from argument.

¶ 33    Instead, defendant argued that "the non-IPI instruction used was misleading, confusing, and prejudiced" defendant. In support, defendant cites *People v. Beasley*, 384 Ill. App. 3d 1039

(2008), and claims the instruction applied the legal principle too broadly. However, this case is distinguishable from *Beasley*, where the State shifted the burden by stating:

" 'If *** it's unconscionable on the part of [the State not to test certain items for fingerprints,] it's just as unconscionable on the part of the defense. So, if you want something tested, you can get it tested. You can't sit back and say, "Well, nobody tested it; therefore, the evidence fails." ' " *Id.* at 1048.

Here, there was no such implication that defendant's failure to test evidence was unconscionable or that defendant had a burden to do so to disprove the State's case.

¶ 34    The legal principle set forth in *Mudd* is the same as that set forth in Rule 412(e)(ii). As such, the only real issue is whether any necessity for the non-IPI instruction is seen. Here, defense counsel's opening argument noted that the "digital scale and cash that they recovered from defendant, which the officers with all their experience think is cocaine, is never tested." Further, when the State requested the non-IPI instruction, defense counsel said, "I have no idea how the defendant would have done the kind of testing, since he had no possession of anything and no ability to have it tested because he didn't have it." He continued by stating,

"It's quite true, we're gonna argue that the state has the burden of proof beyond a reasonable doubt and the defendant doesn't have to prove anything. And the fact that they've had this scale for three years and never bothered to have what was on it tested, and the fact that there's no evidence about DNA or fingerprints presented, yes, those are all things that are important, and this [is] burden shifting ***. *Mudd* was a different case."

¶ 35    True to his word, when defense counsel presented its closing argument, it noted that the police did not do anything with the white Jeep Cherokee, beyond towing it after they found it

11

across town. Counsel further mentioned the fact that despite the officers seeing white residue on the money and the scale, they relied on their training to claim it was cocaine instead of testing the material. He then stated, "Now it might be true that the defendant can have this stuff tested, too, but whose burden is it to prove anything in the case? The burden is on the State *** It's not the defendant's responsibility to prove anything."

¶ 36    Defense counsel continued stating:

"What tells you who could have possessed that cocaine? Well, first of all, fingerprints could be helpful. DNA could be helpful. Instead, they decide[d] they'll build a profile of this boy as a drug dealer, *** [be]cause he's got too much money. And it's got white residue. So, it's profiling him. We'll build a profile. That's how we're gonna show it. We're not gonna bring in somebody who bought cocaine from him or that sold it to him, we're just gonna make these presumptions. Based on what? This one incident."

Defense counsel concluded by arguing that the State failed to meet its burden of proof.

¶ 37    It is undisputed that no IPI jury instruction exists on whether both parties have an opportunity to test the evidence. Further, despite defendant's contentions to the contrary, we find the jury instruction was simple, brief, unbiased, and a correct statement of the law as the language was consistent with that found in *Mudd* as well as the language in Supreme Court Rule 412(e)(ii). Further, both the jury instruction and the closing arguments presented by the State and defense counsel continued to hold the State to its burden of proof and at no time was any argument presented that defendant was required to test the evidence or prove his innocence. More importantly, the instruction clarified an issue of law muddied by defense counsel's statement that "maybe" defendant could have the evidence tested. Under these circumstances, we find it was not

12

an abuse of discretion for the trial court to give the non-IPI jury instruction. See *People v. Ramey*, 151 Ill. 2d 498, 536-37 (1992) (allowing non-IPI jury instruction where it explained concepts not covered by the IPI instructions).

¶ 38                                  III. CONCLUSION

¶ 39    For the above-stated reasons, we hold that the trial court did not abuse its discretion in admitting the non-IPI jury instruction and affirm the trial's judgment and sentence.


¶ 40    Affirmed.